U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 SEP 15 P 2:12

CLERK
BY [signature]
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| JAY BECTON BRILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:26-cv-00020-cr |
| | ) | |
| CENTURY ARMS, INC.; CENTURY INTERNATIONAL ARMS, INC.; and CANIK USA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS OR, IN THE ALTERNATIVE, MOTION TO CHANGE VENUE OR, IN THE FURTHER ALTERNATIVE, MOTION TO DISMISS AND/OR STRIKE CERTAIN CLAIMS**
(Doc. 15)

On January 30, 2026, Jay Becton Briley ("Plaintiff") filed suit against Century Arms, Inc. ("Century"), Century International Arms, Inc. ("Century International"), and Canik USA, LLC ("Canik") (collectively, "Defendants"), arising out of their manufacturing and distribution of an allegedly defective pistol and holster which Plaintiff claims caused his injuries. Plaintiff asserts the following causes of action against Defendants: negligence (Count I), strict products liability for a manufacturing defect (Count II), strict products liability for a design defect (Count III), strict products liability for a failure to warn defect (Count IV), negligent failure to warn (Count V), vicarious liability through joint venture (Count VI), vicarious liability through actual agency (Count VII), and vicarious liability through apparent agency (Count VIII). Plaintiff seeks special, general, and punitive damages from Defendants.

On April 16, 2026, Defendants filed a motion to dismiss on *forum non conveniens* grounds or, in the alternative, motion to change venue or, in the further alternative, motion to dismiss and/or strike certain claims. (Doc. 15.) On May 18, 2026, Plaintiff

opposed the motion, (Doc. 20), and on June 1, 2026, Defendants replied. (Doc. 23.)

Plaintiff is represented by M. Todd Wheeles, Esq.; Matthew G. Garmon, Esq.; and D. James Mackall, Esq. Defendants are represented by Andrew D. Manitsky, Esq.; Anthony M. Pisciotti, Esq.; and Ryan L. Erdreich.

## I. Factual and Procedural Background.

The facts are taken from Plaintiff's Complaint and exhibits submitted in connection with Defendants' motion to dismiss. In ruling on a motion to dismiss on "*forum non conveniens* grounds, this [c]ourt may consider affidavits, affirmations[,] and exhibits submitted in connection with the motion." *Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 389 (S.D.N.Y. 2010); *see also Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d Cir. 2009) (considering facts "taken from the complaint" and "supplemented with information from affidavits[]" in ruling on a motion to dismiss for *forum non conveniens*); *Great Bowery Inc. v. Valnet, Inc.*, 812 F. Supp. 3d 338, 344 n.1 (S.D.N.Y. 2025) (citations omitted) ("In deciding a motion to dismiss for *forum non conveniens*, the [c]ourt may consider materials outside the pleadings[.]").

Plaintiff alleges that he purchased a 9mm Canik TP9SA model pistol and a holster, which were sold "as parts of a kit[,]" from Academy Sports in Greenville, North Carolina. (Doc. 1 at 8, ¶ 21.) Defendants allegedly "designed, inspected, tested, developed, manufactured, marketed, advertised, distributed, and/or sold" the subject pistol and holster and "caused products like the subject pistol and holster to be distributed and sold together in various states within the United States, including the [s]tate of North Carolina, where Plaintiff [] lives." *Id.* at 7, ¶¶ 20-21. Plaintiff claims that Defendants manufactured the subject pistol and holster "in conjunction and in collaboration with [their] parent company," Samsun Yurt Savunma ("SYS"), which is located in Istanbul, Turkey, and that Century "imports firearms from SYS, including Canik pistols, into the United States," and Century International "then sells those imported firearms nationwide, including in the [s]tate of Vermont." *Id.* at 5, ¶¶ 13-14.

On or about February 18, 2023, Plaintiff was allegedly carrying his Canik pistol in its holster on a hunting trip and the following occurred:

> In the course of the hunt, Plaintiff [] removed the subject pistol from the subject holster. Plaintiff [] subsequently placed the subject pistol back into its holster[,] at which time, unknown to Plaintiff [], the snap closure strap looped itself through the trigger guard. As Plaintiff [] inserted the pistol into the subject holster, the strap pulled the trigger and the firearm discharged twice, shooting him through his left leg and into his foot.

*Id.* at 9, ¶ 25.

With their motion to dismiss, Defendants attach a letter from Plaintiff's counsel, wherein he described the incident as follows:

> [Plaintiff] went hunting with friends and was coming out of the woods. He carried the pistol because the woods were "thick" and bobcats were known to be present in the area, so he carried it for protection. One of his friends asked to look at the pistol because he has never seen a Canik pistol and asked to hold it. After the friend was done looking at the pistol, [Plaintiff] went to holster the pistol, and it went off. He took the pistol out of the [holster] and re-holstered the pistol, and it went off a second time. [Plaintiff] is unsure if he was shot by the first round or the second round when the gun fired. His friends carried him up to the road and waited for the police and first responders.

(Doc. 15-1 at 2.)

In his Complaint, Plaintiff asserts that he suffered "extensive tissue, bone, nerve, and muscle damage from the gunshot wound, which required hospitalization, multiple surgeries, and ongoing medical treatment[]" and "is left with permanent physical damage and significant pain[,] which he will most likely have for the rest of his life." (Doc. 1 at 10, ¶¶ 29-30.) Plaintiff claims that, when he suffered his injuries, he was "handling the firearm in a safe, foreseeable, and intended ma[nn]er[,]" his "finger was not on the trigger," and he "did not pull the trigger or otherwise actuate the firing mechanism." *Id.* at 9-10, ¶¶ 26-27. He further claims "[t]he unintentional discharge of Plaintiff['s] [] firearm was the direct, proximate[,] and foreseeable result of the design defect affecting the functionality of the subject holster's snap closure strap." *Id.* at 10, ¶ 28.

According to the Complaint, Plaintiff is a resident of North Carolina. *Id.* at 4, ¶ 8. Century is a Vermont corporation with its principal place of business in Delray Beach, Florida that did business in Vermont at all relevant times. *Id.* at ¶ 9. Its registered agent for service of process is located in Delray Beach, Florida. *Id.* Century International is a

Vermont corporation with its principal place of business in Florida that conducted business in Vermont at all relevant times. (Doc. 1 at 4, ¶ 11.) Its registered agent is located in Delray Beach, Florida. *Id.* Canik is a Delaware limited liability company with its principal place of business in Florida, it conducted business in Vermont at all relevant times, and its registered agent is located in Tallahassee, Florida. (Doc. 1 at 4-5, ¶ 12.) Plaintiff asserts that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Plaintiff claims that venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants "were residents of the [s]tate of Vermont in which the district is located at the time of the incident[]" and because Defendants' "decisions regarding design, manufacture, quality control, and safety of the firearm at issue emanated from Vermont." *Id.* at 7, ¶ 19. The subject pistol and holster were neither manufactured nor purchased in Vermont. Plaintiff's hunting trip took place in North Carolina, and Plaintiff's alleged injuries were incurred and treated in that state.[1]

## II. Conclusions of Law and Analysis.

### A. Whether This Action Should Be Dismissed on *Forum Non Conveniens* Grounds.

Defendants ask the court to dismiss this action and require it to be refiled in the Eastern District of North Carolina, where Plaintiff lives, where he purchased the firearm and the holster, where the alleged discharge of the firearm in the holster took place, and where his alleged injuries occurred and were treated. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

The doctrine of *forum non conveniens*, as codified in § 1404(a), "provide[s] for

[1] Although Plaintiff's Complaint does not identify where Plaintiff went hunting and was injured, Defendants contend it was in North Carolina, and Plaintiff concedes, "it is true that [] Plaintiff's injury did occur in North Carolina[.]" (Doc. 20 at 14.)

transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citations omitted). Defendants' request that the court dismiss this action so that it may be refiled in another federal district court is therefore DENIED.

### B. Whether This Action Should Be Transferred on *Forum Non Conveniens* Grounds.

Defendants alternatively argue that this action should be transferred to the Eastern District of North Carolina. "A district court may, 'for the convenience of parties and witnesses' and 'in the interest of justice,' 'transfer any civil action to any other district or division where it might have been brought.'" *Nat'l Lab. Rels. Bd. v. Universal Smart Conts., LLC*, 166 F.4th 304, 316 (2d Cir. 2026) (quoting 28 U.S.C. § 1404(a)) (alteration adopted). "The party seeking transfer 'carries the burden of making out a strong case for transfer.'" *Id.* (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)).

The factors to be considered are:

> (1) plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Id.* (quoting *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112). "Additional factors identified by courts . . . include: (8) 'the forum's familiarity with governing law,' and (9) 'trial efficiency and the interests of justice, based on the totality of the circumstances.'" *Mt. Hawley Ins. Co. v. Caltec Corp.*, 823 F. Supp. 3d 331, 346 (S.D.N.Y. 2025) (quoting *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 318 (E.D.N.Y. 2010)). "Balancing these factors 'is essentially an equitable task,' but the [c]ourt must be sure to 'give due deference to the plaintiff's choice of forum.'" *Id.* at 347 (quoting *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 57 (S.D.N.Y. 2001)).

Where, as here, a forum selection clause does not govern the dispute, a court "must evaluate both the convenience of the parties and various public-interest considerations[,]" "weigh the relevant factors[,] and decide whether, on balance, a

transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62-63 (2013) (quoting 28 U.S.C. § 1404(a)). "District courts have broad discretion in making determinations of convenience under Section 1404(a)." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021) (internal quotation marks and citation omitted).

**1. Whether This Action Might Have Been Brought in the Eastern District of North Carolina.**

An action may only be transferred to another district "where it might have been brought" initially. 28 U.S.C. § 1404(a). "[F]or the purposes of [S]ection 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." *Guardian Life Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d 206, 213 (S.D.N.Y. 2024) (emphasis omitted) (quoting *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004)).

The Eastern District of North Carolina has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. Although there is insufficient information to determine whether Defendants have the requisite minimum contacts with the Eastern District of North Carolina, Defendants do "not dispute that they are subject to personal jurisdiction in North Carolina for this matter." (Doc. 15 at 6); *see also In re Westinghouse Elec. Co. LLC*, 2019 WL 1349500, at *5 n.8 (S.D.N.Y. Mar. 25, 2019) (finding "[d]efendants are subject—and were subject at the time [p]laintiffs filed their [c]omplaint—to personal jurisdiction in that district[]" because defendants conceded that they "are subject to personal jurisdiction in the transferee forum").

Venue is proper in the Eastern District of North Carolina because that is where Plaintiff purchased the subject pistol and holster and was allegedly injured by those

products. Accordingly, "a substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(b)(2); *see also Cohen v. Nutricost*, 747 F. Supp. 3d 467, 474 (E.D.N.Y. 2024) ("Venue is proper under 28 U.S.C. § 1391(b)(2) because [plaintiff] purchased the [p]roduct in this judicial district."). Plaintiff concedes that venue is proper in the proposed transferee district. *See* Doc. 20 at 11 ("Plaintiff agrees that venue would [] be proper in the Eastern District of North Carolina.").

**2. Plaintiff's Choice of Forum.**

As the Second Circuit has held, a plaintiff's choice of forum is "presumptively entitled to substantial deference." *Gross v. Brit. Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004). "This deference is attenuated, however, where the plaintiff's choice of forum is not the plaintiff's home state or where it is engaged in ongoing business activity." *Mt. Hawley Ins. Co.*, 823 F. Supp. 3d at 347; *see also Gamble v. DeJoy*, 2024 WL 3742754, at *5 (D. Conn. Aug. 9, 2024) ("'When plaintiffs choose a forum that is not any plaintiff's home forum, that choice of forum is accorded considerably less weight.'") (quoting *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 267 (D. Conn. 2012)). "It is also less relevant where the case lacks 'material or significant contacts' with the forum state." *Mt. Hawley Ins. Co.*, 823 F. Supp. 3d at 347 (citations omitted); *see also DreamTeam Dev., LLC v. Fenix Cap. Funding, LLC*, 2026 WL 927779, at *1 (S.D.N.Y. Apr. 2, 2026) ("A plaintiff's choice of forum is accorded less deference where the plaintiff does not reside in the chosen forum and the operative events did not occur there.") (citing *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001)).

Here, Plaintiff chose the District of Vermont as the forum for his lawsuit, but he is not a resident of Vermont and Vermont plays little to no role in this case beyond the fact that some of the defendants are corporations registered to do business in Vermont,[2] although their principal places of business are elsewhere. No other event, transaction, or nexus in this case is found in Vermont. Against this backdrop, Plaintiff's choice of forum is entitled to little deference. This factor nonetheless weighs against transfer. *See Mt.*

---

[2] The Complaint alleges that Canik "previously" had a license to do business in Vermont. *See* Doc. 1 at 5, ¶ 12.

*Hawley Ins. Co.*, 823 F. Supp. 3d at 348 (finding "this factor only slightly weighs" against transfer because "nothing material about this case points to New York" as plaintiff "is not domiciled in New York, and did not write the insurance policy at issue in New York; indeed, no events at issue in this litigation occurred in New York[]"); *Ybarra v. Jones*, 2025 WL 2939309, at *2 (S.D.N.Y. Sept. 25, 2025) ("Plaintiff does not reside in this district and the operative events did not occur here; therefore, his choice of forum is accorded less weight.").

**3. The Convenience of Witnesses.**

The convenience of the witnesses is "probably the most important factor" in deciding a motion to transfer venue. *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989) (alteration adopted) (internal quotation marks and citation omitted). In analyzing this factor, "the convenience of non-party witnesses is given greater weight than that of party witnesses." *Prisoners' Legal Servs. of N.Y. v. United States Dep't of Homeland Sec.*, 2025 WL 2452247, at *7 (S.D.N.Y. Aug. 25, 2025) (citation omitted). Plaintiff concedes Defendants are correct that "virtually all non-party fact witnesses in this case, including first responders[] and treating medical providers, reside in North Carolina." (Doc. 20 at 12) (internal quotation marks omitted); *see also Angell v. Guardian Life Ins. Co. of Am.*, 2023 WL 2182323, at *2 (S.D.N.Y. Feb. 23, 2023) (finding "the convenience of witnesses weighs in favor of transfer[]" because plaintiff "lives in Rhode Island, as do her treating physicians[,]" and "[t]he District of Rhode Island would also possess subpoena power extending to these witnesses, where this court does not[]").

"When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014) (internal quotation marks and citation omitted); *see also Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("In considering the convenience of the witnesses, the [c]ourt should 'not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the

proposed transferee forum. Instead, the [c]ourt must qualitatively evaluate the materiality of the testimony that the witnesses may provide.'") (citation omitted). "Because of the importance of this factor," generally "the party seeking transfer 'must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'" *Neil Bros.*, 425 F. Supp. 2d at 329 (quoting *Royal & Sunalliance v. Brit. Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)). "The party seeking transfer typically submits an affidavit listing 'the potential principal witnesses expected to be called and the substance of their testimony.'" *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 576 (E.D.N.Y. 2014) (alteration adopted) (citation omitted). However, "a specific showing is required only when the movant seeks a transfer solely on account of the convenience of witnesses. If the movant seeks a transfer on account of several factors, his failure to specify key witnesses and their testimony is not fatal." *Coe*, 724 F. Supp. 3d at 215, n.3 (alteration adopted) (internal quotation marks, citation, and emphasis omitted).

Although Defendants did not submit an affidavit identifying key witnesses to be called and specifying the substance of their testimony, Defendants do not seek transfer solely on account of the convenience of witnesses, and discovery has not yet taken place in this action.[3] As a result, their failure to do so is not fatal. *See, e.g.*, *Prisoners' Legal Servs. of N.Y.*, 2025 WL 2452247, at *6 ("Because [d]efendants do not 'seek[] a transfer solely on account of the convenience of witnesses,' they are not required to make a specific showing as to the identity of any witnesses.") (alteration adopted) (citation omitted).

It is uncontested that the witnesses to the February 18, 2023 incident, the first responders, and Plaintiff's treating medical providers are all located in North Carolina. This factor thus weighs in favor of transfer.

**4. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof.**

"'In an era of electronic documents, easy copying[,] and overnight shipping, this

[3] The court granted the parties' stipulated motion to stay discovery pending resolution of Defendants' motion to dismiss or change venue. *See* Doc. 19.

factor assumes much less importance than it did formerly.'" *Coe*, 724 F. Supp. 3d at 215. "The location of relevant documents and the ease of access to sources of proof is mostly a neutral factor, in light of 'the technological age in which we live, where there is widespread use of, among other things, electronic document production.'" *Tlapanco v. Elges*, 207 F. Supp. 3d 324, 330-31 (S.D.N.Y. 2016) (quoting *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 258 (E.D.N.Y. 2010)).

Although Defendants claim that relevant documents for Plaintiff's case, including medical records and emergency response records, are located in North Carolina, "[i]t is not sufficient for the moving party to assert merely that relevant documents are located in the proposed transferee forum[;] rather[,] the moving party must establish that it would be unable to move or copy the documents easily." *Turner v. Trans-India Prods., Inc.*, 2020 WL 4369634, at *2 (E.D.N.Y. July 30, 2020) (internal quotation marks and citation omitted); *see also Coe*, 724 F. Supp. 3d at 215 ("[T]he location of documents is entitled to little weight unless the movant makes a detailed showing of the burden it would incur absent transfer.'") (alteration adopted) (internal quotation marks and citation omitted). As Plaintiff points out, the subject pistol and holster are located in Alabama with Plaintiff's counsel and are "highly portable." (Doc. 20 at 13.) Defendants do not argue that any other physical evidence or documents would be difficult to move to Vermont, and this factor is therefore neutral. *See Turner*, 2020 WL 4369634, at *2 ("Because [d]efendant has failed to demonstrate that it would be burdensome to transport documents or other evidence to this [d]istrict, this factor is neutral.").

**5. The Convenience of the Parties.**

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 337 (S.D.N.Y. 2025) (internal quotation marks and citation omitted). "The parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party." *Id.* (internal quotation marks omitted) (quoting *Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 578 (S.D.N.Y. 2015)). Plaintiff

is a citizen of North Carolina while two of the three defendants are citizens of Vermont.[4] Although each party prefers to litigate outside of their home state, transferring this action to North Carolina would arguably shift the inconvenience from Plaintiff to Defendants. Thus, this factor is also neutral. *See id.* ("Because [p]laintiffs would find it easier to litigate in New York, and [d]efendant would find it easier to litigate in California, this factor is neutral.").

**6. The Locus of Operative Facts.**

"The locus of operative facts is [] a 'primary factor in determining a § 1404(a) motion to transfer' that 'substantially favors transfer from this district when a party has not shown that any of the operative facts arose in'" the plaintiff's chosen forum. *Angell*, 2023 WL 2182323, at *2 (citation omitted). "[A] plaintiff's choice of forum is accorded substantially less deference when the forum is . . . [not] the place where the operative facts of the action occurred." *Lowinger v. Rocket One Cap., LLC*, 2024 WL 2882622, at *7 (S.D.N.Y. June 5, 2024) (internal quotation marks and citation omitted). "Where there is no material connection between [the chosen] district and the operative facts, the interests of justice require the transfer of the action." *Bare Body Laser Spa, Inc. v. Billings*, 2024 WL 3445333, at *8 (S.D.N.Y. July 17, 2024) (alterations adopted) (internal quotation marks and citation omitted).

"To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Steen v. Assurant, Inc.*, 2023 WL 4406303, at *11 (S.D.N.Y. July 6, 2023) (internal quotation marks omitted) (quoting *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 30 (S.D.N.Y. 2016)). The operative facts of this case occurred in the Eastern District of North Carolina as that is where Plaintiff purchased the firearm and holster, where he was allegedly injured, and where his recovery took place. Although Plaintiff points out that "Defendants admittedly imported into and distributed

---

[4] "[A] corporation shall be deemed to be a citizen of any [s]tate by which it has been incorporated and of the [s]tate where it has its principal place of business." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (emphasis and internal quotation marks omitted) (quoting 28 U.S.C. § 1332(c)(1)).

from" Vermont, (Doc. 20 at 14), the firearm was manufactured in Turkey, and Plaintiff does not claim that he obtained the firearm or holster from Defendants in Vermont. Because the locus of operative facts is in the Eastern District of North Carolina, this factor also weighs heavily in favor of transfer.

**7. The Availability of Process to Compel the Attendance of Unwilling Witnesses.**

Under Fed. R. Civ. P. 45(c)(1), a district court may only compel by subpoena a non-party witness within the district or within 100 miles of the court. Generally, a party moving to change venue must "identify specific non-party witnesses, outside the court[']s subpoena power, and [] provide some evidence that such witnesses would be unwilling to testify voluntarily in this forum." *Arzate Roman Arana v. Experian Info. Sols., Inc.*, 2026 WL 880527, at *7 (S.D.N.Y. Mar. 31, 2026) (collecting cases).

Defendants point out that this court could not exercise compulsory process over non-party fact witnesses located in North Carolina. However, they do not identify any witnesses located there who would be unwilling to testify at a potential trial in this district. *See Scalabrini v. PMAB, LLC*, 2020 WL 1049167, at *9 (S.D.N.Y. Mar. 3, 2020) ("Defendants have identified no non-party witness that they or [p]laintiff would call at trial, let alone any indication that such non-party witness would be unwilling to testify in the Southern District of New York."). By the same token, Plaintiff points to no evidence that non-party witnesses will appear voluntarily, and videotaped depositions may not be allowed to serve as trial testimony unless the witness is unavailable. *See* Fed. R. Civ. P. 32(a)(4) (explaining that, at trial, a party "may use for any purpose the deposition of a witness . . . if the court finds" the witness is unavailable). On balance, although it is reasonable to assume that the vast majority of the fact witnesses who reside in North Carolina would find it more convenient to appear for trial there rather than in Vermont, this factor is neutral. *See Arzate Roman Arana*, 2026 WL 880527, at *7 ("Because neither party has identified any specific non-party witness who would be unwilling to testify in this [d]istrict, this factor is neutral."); *Freeman v. Farr*, 2025 WL 3754080, at *4 (E.D.N.Y. Dec. 29, 2025) ("The parties have not identified any potential non-party

witnesses who would be unwilling to testify absent a subpoena; thus, the availability of process to compel the attendance of unwilling witnesses is neutral.") (citation omitted).

**8. The Relative Means of the Parties.**

"The relative means of the parties may 'support or discourage transfer of venue if there is a significant financial disparity between' them." *Ford v. Shader*, 2025 WL 3295015, at *4 (S.D.N.Y. Nov. 26, 2025) (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 290 (S.D.N.Y. 2004)). Defendants argue that "requiring Plaintiff to litigate" in Vermont and "far from home, where all relevant witnesses and evidence are located locally, would impose unnecessary financial and practical burdens." (Doc. 15 at 8-9.) However, Plaintiff filed this action in Vermont and is apparently willing to bear any financial burden that litigating here imposes on him. Defendants cite no evidence that it would constitute an undue financial hardship for them to litigate in the District of Vermont or the Eastern District of North Carolina. This factor is therefore also neutral.

**9. The Forum's Familiarity With the Governing Law.**

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). To determine which state substantive law applies, "a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would apply if the suit were brought in state court." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013). Because this case was brought in the District of Vermont, Vermont's choice-of-law rules apply.

"The Vermont Supreme Court 'has adopted the Restatement (Second) of Conflicts for choice-of-law questions in both tort and contract cases.'" *Leavitt v. Ethicon, Inc.*, 524 F. Supp. 3d 360, 366 (D. Vt. 2021) (quoting *McKinnon v. F.H. Morgan & Co.*, 750 A.2d 1026, 1028 (Vt. 2000)). "The general choice-of-law principle for tort cases is that the rights and liabilities of the parties are determined by the law of the state that has the most significant relationship to the occurrence and the parties." *Id.* (internal quotation marks omitted) (alteration adopted) (first quoting *McKinnon*, 750 A.2d at 1028; then quoting

Restatement (Second) of Conflict of Laws § 145(1)). "Under § 146 of the Restatement, the 'law of the state where the injury occurred determines the rights and liabilities of the parties' in an action for personal injury unless another jurisdiction has a more significant relationship to the occurrence and the parties under the general principles stated in § 6." *McKinnon*, 750 A.2d at 1028.

In this case, because Plaintiff was injured in North Carolina, North Carolina law is presumed to apply unless Plaintiff "demonstrates that Vermont's interests in the litigation override the place-of-injury presumption contained in § 146." *Id.* In determining whether the presumption is overcome, the following factors are to be considered:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability[,] and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2)(a)-(g).

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation[,] and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145. "The place where the injury occurred" is "the factor generally considered to be most significant in personal injury cases, particularly when it coincides with the place of the plaintiff's domicile[.]" *McKinnon*, 750 A.2d at 1030.

Plaintiff is domiciled in North Carolina, bought the pistol and holster in North Carolina, and was allegedly injured there by Defendants' products. As a result, North Carolina law is likely to apply. *See Leavitt*, 524 F. Supp. 3d at 366 (finding Vermont law applied to plaintiffs' tort claims because "[p]laintiffs are Vermont residents and assert claims that arise out of a personal injury from [a medical device] purchased and implanted in Vermont by a Vermont physician[]"); *Drake v. Allergan, Inc.*, 63 F. Supp.

3d 382, 389 (D. Vt. 2014) (finding Vermont law applied to plaintiff's tort claims because his "alleged injuries occurred in Vermont"). Moreover the Eastern District of North Carolina is almost certain to be more familiar with the laws of the State of North Carolina than this court.

Plaintiff nonetheless argues that Vermont law should apply to this action because Vermont "has an interest in addressing the dangerous flow of products into interstate commerce which may injure persons inside or outside of the state like Plaintiff[.]" (Doc. 20 at 17.) However, North Carolina has an even greater interest in protecting its residents from harm caused by corporations which market and sell their products to its residents in its state. *See McKinnon*, 750 A.2d at 1029-30 ("[T]he most compelling consideration in this suit is Quebec's interest in protecting its citizens from harm allegedly caused by corporations that market their products both in the United States and Canada."). North Carolina has the most significant relationship to the parties and Plaintiff's claims, and North Carolina law will apply. Because "[d]istrict courts are presumed to be more familiar with the law of the state in which they sit[,]" *Costello*, 888 F. Supp. 2d at 269, this factor also weighs in favor of transfer.

**10. Trial Efficiency and the Interests of Justice.**

"This final factor is 'broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.'" *Horanzy v. Vemma Nutrition Co.*, 87 F. Supp. 3d 341, 350 (N.D.N.Y. 2015) (quoting *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 519 (D. Conn. 2011)); *see also Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 385 (W.D.N.Y. 2018) ("The interests of justice are based on the totality of the circumstances.") (internal quotation marks and citation omitted). With respect to trial efficiency, "[w]hen a case is in its earliest stages, it is generally not inefficient to transfer the case." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 441 (S.D.N.Y. 2018) (internal quotation marks omitted) (quoting *Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 411 (S.D.N.Y. 2016)). This case is in an early phase, no discovery schedule has been issued, and a transfer would not delay its

progress. Indeed, a transfer would promote judicial efficiency because most, if not all, fact witnesses in this case, including Plaintiff, reside in the Eastern District of North Carolina.

In addition, North Carolina has a greater interest in regulating Defendants' conduct within its borders and protecting its citizens like Plaintiff. *See Horanzy*, 87 F. Supp. 3d at 350 (finding the interests of justice favored transfer because "New York's connection to this case is relatively tenuous[]"); *Nuss v. Guardian Life Ins. Co. of Am.*, 2021 WL 1791593, at *9 (S.D.N.Y. May 5, 2021) (finding the interests of justice favored transfer because "[t]his case has no relation to this [d]istrict" and plaintiff "would be better served by litigating in her backyard where the bulk of the events occurred and witnesses are located[]"). Accordingly, trial efficiency and the interests of justice weigh in favor of transfer.

**11. Balancing the Factors.**

The most significant factors, including the convenience of witnesses, the locus of operative facts, the forum's familiarity with the governing law, and trial efficiency and the interests of justice, all weigh in favor of transfer. Other less important factors are neutral, and only Plaintiff's choice of forum slightly weighs against transfer. Transfer is therefore appropriate. *See Corley*, 11 F.4th at 90 (affirming transfer to the District of Connecticut because "[a]ll of the parties resided in Connecticut, where the operative facts had occurred, and it was reasonable to expect that all relevant documents, witnesses, and means of process for obtaining evidence were there[]"); *Mt. Hawley Ins. Co.*, 823 F. Supp. 3d at 349 (transferring the case because "[t]he convenience of witnesses and the locus of operative facts all favor transfer[] and outweigh the countervailing factors, which are the convenience of the parties . . . and [plaintiff]'s choice of forum[]"); *Rindfleisch*, 752 F. Supp. 2d at 262 (transferring the case "because plaintiffs do not reside in this [d]istrict and this [d]istrict has little or no connection to the operative facts in this case[]" and "the witnesses who can provide the most material testimony in this case reside in the Northern District of Georgia[]").

For the reasons stated above, Defendants' motion to transfer this action to the

Eastern District of North Carolina is GRANTED.

### C. Whether Plaintiff's Vicarious Liability Allegations and Punitive Damages Demand Should Be Dismissed or Stricken.

Because the court is transferring this case to the Eastern District of North Carolina, Defendants' motion to dismiss or strike the Complaint's vicarious liability allegations and punitive damages request is DENIED as moot without prejudice to renew in the transferee district. *See Androb Jewelry Serv., Inc. v. Malca-Amit USA, LLC*, 2017 WL 4712422, at *10 (S.D.N.Y. Sept. 25, 2017) ("[T]he [c]ourt grants the [d]efendants' motion to transfer[] and denies the motion to dismiss as moot."); *Meszaros v. Klick*, 2011 WL 5238488, at *12 (W.D.N.Y. Oct. 29, 2011) ("Because the case will be transferred, [d]efendants' motions are denied as moot to the extent they seek dismissal on other grounds.").

## CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motion to dismiss on *forum non conveniens* grounds, GRANTS Defendants' motion to transfer to the Eastern District of North Carolina, and DENIES, as moot and without prejudice, Defendants' motion to dismiss and/or strike certain claims. (Doc. 15.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 15th day of September, 2026.

Christina Reiss, Chief Judge
United States District Court